CITY COUNCIL OF AUSTIN, Texas, Bruce Todd, Mayor of the City of Austin, Council Members Charles Urdy, Max Nofziger, Ronney Reynolds, Louise C. Epstein, Robert A. Larson and Gus Garcia, and James E. Aldridge, City Clerk of the City of Austin, Appellants,

v.

SAVE OUR SPRINGS COALITION, Brigid Shea, Jennie Hamilton and David Butts, Appellees.

No. 3–92–112–CV.

Court of Appeals of Texas, Austin.

April 15, 1992.

Rehearing Overruled April 29, 1992.

Barney Knight, Bickerstaff, Heath & Smiley, L.L.P., Austin, for City Council of Austin, Texas, et al.

Roy Q. Minton, Minton, Burton, Foster & Collins, Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Council Members Urdy, Reynolds, Epstein & Larson.

David R. Richards, Gray & Becker, P.C., Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and SMITH, JJ.

PER CURIAM.

Save Our Springs Coalition,[1] a coalition of citizen organizations interested in the protection of Barton Springs, Barton Creek, and the Edwards Aquifer, filed with the city clerk of Austin, Texas, an initiative petition requesting the City Council of Austin, Texas, to adopt the Coalition's proposed ordinance or to submit the ordinance to the voters. The city clerk certified the petition to the city council on March 13, 1992.

When the city council did not adopt the initiated ordinance or call an election, the Coalition sought mandamus relief from the district court of Travis County to compel the city council to set an election on the initiated ordinance for May 2, 1992. The City responded that the city charter allows the city council to exercise any one of three options in the face of such a petition and, therefore, mandamus was improper. The district court ordered the city council to call the election for May 2, 1992. We conclude that a conflict exists between the Austin city charter and the relevant portions of the election code and that because the duty to act was not clearly fixed, the district-court order was premature. Accordingly, we must reverse.

Our review is restricted to one specific question: whether the district court properly ordered mandamus, an extraordinary remedy justified in only the most narrow circumstances. We do not, and in fact cannot, consider the merits of the proposed ordinance, the motivation of individual city council members, the propriety of the City's pursuit of this appeal, or the resulting delay and expense. These are uniquely political questions which must be answered by the voters of Austin.

1. Appellants are the City Council of Austin, Texas; Bruce Todd, Mayor of the City of Austin; Council Members Charles Urdy, Max Nofziger, Ronney Reynolds, Louise C. Epstein, Robert A. Larson, and Gus Garcia; and James E. Aldridge, City Clerk of the City of Austin ("the City"). Appellees are Save Our Springs Coalition, Brigid Shea, Jennie Hamilton, and David Butts ("the Coalition").

In its original petition filed in the district court, the Coalition asserted, "Upon receipt of the certified initiative petition, the City Council became duty bound to act in accordance with Article IV, § 5 of the City Charter and the Texas Election Code." That section of the charter provides:

When the council receives an authorized initiative petition certified by the city clerk to be sufficient, the council shall either:

(a) Pass the initiated ordinance without amendment within sixty (60) days after the date of the certification to the council; or

(b) Submit said initiated ordinance without amendment to a vote of the qualified voters of the city at a regular or special election to be held within ninety (90) days after the date of the certification to the council; or

(c) At such election submit to a vote of the qualified voters of the city said initiated ordinance without amendment, and an alternative ordinance on the same subject proposed by the council.

Texas Elec. Code Ann. § 3.005 (1986) provides, "An election ordered by an authority of a political subdivision shall be ordered not later than the 45th day before election day." The Coalition relied further on Tex. Elec.Code Ann. § 41.004(a) (1986), which states:

If a law outside this code other than the constitution requires a special election subject to Section 41.004(a) to be held within a particular period after the occurrence of a certain event, the election shall be held on an authorized uniform election date occurring within the period unless no uniform election date within the period affords enough time to hold the election in the manner required by law. In that case, the election shall be held on the first authorized uniform election date occurring after the expiration of the period.

Based on these provisions, the Coalition contended that, pursuant to Tex.Elec.Code § 41.001(a) (Supp.1992), the only authorized uniform election date within the ninety-day period was May 2, 1992, and that the city

council must set an election for that day no later than March 18, 1992, a date forty-five days before May 2, 1992.

At the district-court hearing on March 17, 1992, the City responded that the council had no obligation to set an election until the expiration of the sixty-day period set out in § 5(a) and, therefore, the May 2, 1992, date did not afford sufficient time to hold the election in the required manner. Pursuant to § 41.004(a), the council could, therefore, set the election for the next uniform election date after the expiration of the ninety-day period.

On March 17, 1992, the district court issued its order granting the writ of mandamus and ordering that

City Council of City of Austin, and Bruce Todd its Mayor and Charles Urdy, Max Noziger [sic], Ronney Reynolds, Louise C. Epstein, Robert A. Larson and Gus Garcia, members of the Austin City Council be and the same are hereby commanded to forthwith call an election on the plaintiffs' Save Our Springs Coalition initiative petition, said election to be called for May 2, 1992 in accordance with Section 41.004 of the Texas Election Code, and these defendants are ordered to take all steps necessary to order by March 18, 1992 such election for May 2, 1992.

The City filed its notice of appeal seeking review of the district court's writ of mandamus. The appeal effectively superseded the order of mandamus. Tex.Civ.Prac. & Rem.Code Ann. § 6.002 (Supp.1992); *Ammex Warehouse Co. v. Archer*, 381 S.W.2d 478 (Tex.1964); *City of W. Univ. Place v. Martin*, 132 Tex. 354, 123 S.W.2d 638 (1939).

■■■ A writ of mandamus is an extraordinary remedy and will issue only to compel a public official to perform a ministerial act. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex.1991); *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Anderson*, 806 S.W.2d at

793; *Depoyster v. Baker,* 89 Tex. 155, 34 S.W. 106, 107 (1896); *Hoot v. Brewer,* 640 S.W.2d 758, 761 (Tex.App.1982, orig. proceeding). Before such a writ will issue, a party must have demanded performance of the act and the public official must have refused to perform. *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979). The writ will not issue to review or control the action of a public officer in a matter involving discretion. *Womack,* 291 S.W.2d at 682.

In its sixth point of error, the City contends, in effect, that the district court erred in granting the writ of mandamus because at least as of March 17, 1992, the City still had discretion in determining whether to set an election for May 2, 1992. We must agree and will sustain the point of error. We do not do so, however, on the basis that the city council absolutely had sixty days within which to deliberate before any obligation arose to set an election on the initiated ordinance.

After the city charter provisions at issue were adopted, the legislature enacted § 3.005 of the election code, which requires a political subdivision to order an election forty-five days in advance of the election. *See* 1985 Tex.Gen.Laws, ch. 211, § 1, at 809. The City cannot deliberate the full sixty days the charter affords, give the required forty-five day notice, and still hold an election within ninety days from the date the city clerk certifies an initiated ordinance. Further, the four uniform election days provided by the election code do not fall precisely at 90 day intervals.

Once the city clerk certifies an ordinance, the city council has three options: (1) to pass the initiated ordinance, (2) to submit the ordinance at a regular or special election, or (3) to submit the initiated ordinance and an alternative ordinance at a regular or special election. These provisions are mandatory. *See Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645, 647 (1951). When the district court rendered its order, the council still retained the discretion to choose among the three options. However the conflict between the city charter and the election code may be resolved, on March 17th the calling of an election for May 2,

1992, had not yet become merely a ministerial duty.

The situation before this Court differs from those in which courts have found mandamus relief appropriate. In those cases, the charter provisions and the facts clearly established that the public official had no discretion to exercise. *See e.g. Anderson,* 806 S.W.2d at 791 (once trial court determined that requisite number of voters had signed petition, mayor had no discretion; act was ministerial); *Duffy v. Branch,* 828 S.W.2d 211 (Tex.App.—Dallas, 1992, orig. proceeding) (if, after filing of recall petition, council member refuses to resign, city charter provides that city council must order recall election; provision allows for no discretion); *Burns v. Kelly,* 658 S.W.2d 731 (Tex.App.1983, orig. proceeding); *Blanchard v. Fulbright,* 633 S.W.2d 617 (Tex.App.1982, orig. proceeding). The opinion in *Glass* similarly reflects the city council's refusal to call an election based on a belief that the initiated ordinance would be void.

In the instant cause, at the time the writ of mandamus issued, the city council retained discretion to choose among three options. The calling of an election was not the only remaining course of action. *See generally Vara v. City of Houston,* 583 S.W.2d 935 (Tex.Civ.App.1979, writ ref'd n.r.e.), *appeal dism'd,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980). Although unlikely, the city council could have adopted the initiated ordinance at its meeting on March 18, 1992. Because the district court order of March 17, 1992, foreclosed such action by directing the council to call an election no later than March 18, 1992, the writ of mandamus was premature.

We reiterate that we do not adopt the City's argument that the period within which to hold an election begins to run only after the council has had sixty days within which to consider the initiated ordinance. The council does and should have a reasonable time to deliberate. The provisions of the election code, however, may require that reasonable time to be less than the

sixty days provided in the charter. Likewise, an authorized uniform election day will not always occur within ninety days from certification.

We sustain the City's sixth point of error on the limited basis set out above. Because this disposition requires that we reverse the order of the district court, we do not address the City's points of error one through five or the points raised in the brief of the four council members.

The order of the district court of March 17, 1992, is reversed and judgment rendered that the request for writ of mandamus be denied.