TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-02-00114-CV






Texas Health Care Information Council and the State of Texas,

Office of the Attorney General, Appellants


v.


Seton Health Plan, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN100907, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING






 Appellants Texas Health Care Information Council ("the Council") and the State of
Texas, Office of the Attorney General ("the Attorney General") (collectively "the State"), appeal the
district court's judgment granting appellee Seton Health Plan, Inc.'s ("Seton") request for a
declaratory judgment to construe a statute, ordering Seton to pay penalties, ordering the State to pay
Seton attorney's fees, and dismissing with prejudice the Council's counterclaim and request for
injunctive relief. In four issues, the State contends the district court's judgment must be reversed
because: (1) Seton's action for declaratory judgment was moot or alternatively Seton's request for
declaratory judgment was barred by sovereign immunity; (2) the State was entitled to injunctive
relief in addition to the assessment of a civil penalty against Seton; (3) the court's assessment of the
minimum penalty constituted an abuse of discretion; and (4) the failure to award the State reasonable
attorney's fees and costs constituted an abuse of discretion. We will affirm in part and reverse and
remand in part. 


BACKGROUND


 Seton is a licensed health maintenance organization ("HMO") providing health
benefits plans, claims administration, and claims payment for member groups throughout central
Texas. Under Chapter 108 of the Texas Health and Safety Code ("the Code"), Seton must file a
verified annual Health Plan Employer Data Information Set ("HEDIS") report with the Council. See
Tex. Health & Safety Code §§ 108.009, .010 (West 2001); see also 25 Tex. Admin. Code § 1301.33
(West 2002) (Texas Health Care Information Council, Health Care Information). The HEDIS report
must include data on the number of members served by the HMO, the demographics of the services
provided, aggregate claims information, and related information for the specified reporting period. 
The Code provides for a civil penalty for failure to file an annual HEDIS report: "A person who fails
to supply available data under Sections 108.009 and 108.010 is liable for a civil penalty of not less
than $1,000 or more than $10,000 for each act of violation." Tex. Health & Safety Code
§ 108.014(b). Seton's 1999 report was due to be filed with the Council by June 15, 2000. Seton did
not file its report.

 On January 10, 2001, Seton was notified by a letter from the Attorney General (the
"Johnsonius letter") that it had failed to file the 1999 HEDIS report and that "demand is hereby made
for the amount of $153,000 in civil penalties." The letter also stated that if Seton did not make the
payment to the Council, the Attorney General "will file a lawsuit against Seton . . . for no less than
the amount of $153,000 . . . ." (1) Seton conceded the failure to file, but disputed the amount of the
penalty. Seton took the position that $10,000 per report was the maximum penalty for failure to file
the annual HEDIS report. The State responded that it interpreted "each act of violation" in section
108.014 of the Code to mean each day of violation. (2) In the months following its receipt of the
Johnsonius letter, Seton made a number of attempts to pay a civil penalty that it believed comported
with the statute. In each instance, the State rejected the offer and stated that it intended to file a
lawsuit to collect a penalty of no less than $153,000. During one exchange, after rejecting Seton's
offer to pay a $12,500 penalty, the Attorney General stated that "little remains but to see how the
Courts will interpret the Statute."

 In March 2001, Seton filed a declaratory judgment action against the Council and the
Attorney General to construe the statute pursuant to the provisions of the Administrative Procedure
Act ("the APA") and Uniform Declaratory Judgments Act ("the UDJA"). Tex. Gov't Code Ann.
§ 2001.038 (West 2000); Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997). Seton sought
a declaration that $10,000 per report is the maximum civil penalty that may be assessed under the
Code for failure to file the annual HEDIS report. Seton also sought to recover its attorney's fees and
costs incurred in obtaining the requested relief. 

 On April 13, 2001, the Attorney General sent a letter (the "withdrawal letter") to
Seton stating that the Johnsonius letter was "withdrawn" and that it "was not intended as an
assessment of civil penalties" because that power "is vested in our courts." In July, the Council
counterclaimed against Seton, seeking to have the district court: (1) permanently enjoin Seton from
violating the Code by ordering it to submit HEDIS reports for the years 1999 and 2000 and each
subsequent year thereafter; (3) (2) order that Seton be assessed "civil penalties not to exceed $10,000
for each act of violation for its failure to submit HEDIS data" for 1999 and 2000; and (3) order Seton
to pay the Council's costs and attorney's fees. Seton and the State then filed cross-motions for
summary judgment. 

 The State argued in its motion for summary judgment that Seton's claim for
declaratory relief was moot once the Attorney General had withdrawn the Johnsonius letter and
because it was "neither requesting the assessment by [the district court] of penalties in excess of
$10,000 per violation, nor is there a threat to [Seton] that [the State] will do so in the future." Seton
contended that the district court had jurisdiction to grant declaratory relief because, while
acknowledging that "no current controversy" existed between itself and the State on the issue of the
maximum civil penalty for the two years in question, it still had "reason to fear that [the Council]
may in the future attempt to assess penalties in excess of the maximum allowed by the regulation." 
Following a hearing and submission of briefs, the district court rendered a final declaration and
judgment whereby it: (1) declared $10,000 per report to be the maximum penalty for failure to file
an annual HEDIS report required by statute and the Council's rules; (2) assessed penalties against
Seton of $1,000 for failure to file a 1999 report and $1,000 for failure to file a 2000 report; (3)
ordered the State to pay Seton $15,000 in attorney's fees for obtaining the declaratory judgment; and
(4) dismissed with prejudice the Council's counterclaim, thereby denying injunctive relief. This
appeal followed. 


STANDARD OF REVIEW


 Summary judgment is proper if there exists no genuine issue as to any material fact
and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Gibbs v.
General Motors Inc., 450 S.W.2d 827, 828 (Tex. 1970). The standards for reviewing a summary
judgment are well established: (1) the movant for summary judgment has the burden of showing that
no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the non-movant will be taken as true; and (3) every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor. Nixon v. Mr. Prop.
Mngmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 Here, the parties asserted that there were no disputed material issues. Because all
parties filed motions for summary judgment, one of which was granted and the other denied, we
must review the summary judgment evidence presented by both sides, determine all questions
presented, and render such judgment as the trial court should have rendered. See Holy Cross Church
of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001); Vanliner Ins. Co. v. Tex. Workers' Comp.
Comm'n, 999 S.W.2d 575, 577 (Tex. App.--Austin 1999, no pet.) (citing Commissioners Court v.
Agan, 940 S.W.2d 77, 81 (Tex. 1997)). Each party must carry its own burden as the movant and,
in response to the other party's motion, as the non-movant. Gaut v. Amarillo Eco. Dev. Corp., 921
S.W.2d 884, 887 (Tex. App.--Austin 1996, no writ) (citing James v. Hitchcock Indep. Sch. Dist.,
742 S.W.2d 701, 703 (Tex. App.--Houston [1st Dist.] 1987, writ denied)). The prevailing party
bears the burden of establishing that it is entitled to judgment as a matter of law. Gaut, 921 S.W.2d
at 887 (citing Guynes v. Galveston Co., 861 S.W.2d 861, 862 (Tex. 1993)). 

 In its final judgment, the district court held that "there is no material fact question on
any of the parties' disputes." When a trial court's order granting summary judgment does not specify
the grounds relied upon, the reviewing court must affirm the summary judgment if any of the
summary judgment grounds are meritorious. FM Properties Operating Co. v. City of Austin, 22
S.W.3d 868, 872-73 (Tex. 2000) (citing Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995)). 




DISCUSSION


Mootness

 In its first issue, the State contends that the district court lacked jurisdiction over
Seton's request for declaratory judgment because no live controversy existed at the time the court
rendered a decision. We disagree. A declaratory judgment action may be used, among other things, 
to determine "any question of construction or validity arising under" a statute. Tex. Civ. Prac. &
Rem. Code Ann. § 37.004(a) (West 1997); see also Frasier v. Yanes, 9 S.W.3d 422, 427 (Tex.
App.--Austin 1999, no pet.). In the words of the supreme court, a declaratory judgment proceeding
is "an additional remedy and does not supplant any existing remedy, but is intended as a speedy and
effective remedy for the determination of the rights of the parties when a real controversy has arisen
and even before the wrong has actually been committed." Cobb v. Harrington, 190 S.W.2d 709, 713
(Tex. 1945). 

 A declaratory judgment is appropriate when a justiciable controversy exists as to the
rights and status of the parties and the controversy will be resolved by the declaration sought.
Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995); Texas Dept. of Pub. Safety v.
Moore, 985 S.W.2d 149, 153 (Tex. App.--Austin 1998, no pet.). A declaratory judgment action
does not vest a court with the power to pass upon hypothetical or contingent situations, or to
determine questions not then essential to the decision of an actual controversy, although such
questions may in the future require adjudication. Firemen's Ins. Co. v. Burch, 442 S.W.2d 331, 333
(Tex. 1968). A controversy is considered justiciable, however, if there exists a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. 
Beadle, 907 S.W.2d at 467; City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 754 (Tex.
App.--Austin 1998, no pet.). Otherwise, the judgment amounts to no more than an advisory
opinion, which the district court does not have power to render. Lone Starr Multi Theatres, Inc. v.
State, 922 S.W.2d 295, 297 (Tex. App.--Austin 1996, no writ). 

 The mootness doctrine dictates that courts avoid rendering advisory opinions by only
deciding cases that present a "live" controversy at the time of the decision. Camarena v. Texas
Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (1) it appears
that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when
one seeks a judgment on some matter which, when rendered for any reason, cannot have any
practical legal effect on a then-existing controversy. Scholl v. Firemen's & Policemen's Civil Serv.
Comm'n, 520 S.W.2d 470, 471 (Tex. Civ. App.--Corpus Christi 1975, no writ) (actions requested
in suit for declaratory and injunctive relief were taken so no controversy remained). Cases may
become moot when allegedly wrongful behavior has passed and could not be expected to recur. 
Securities & Exch. Comm'n v. Medical Comm. for Human Rights, 404 U.S. 403, 406 (1972); see also
Reyna v. City of Weslaco, 944 S.W.2d 657, 662 (Tex. App.--Corpus Christi 1997, no writ). The State argues that the controversy between these parties became moot when the
Attorney General withdrew the Johnsonius letter and conceded that the Attorney General and the
Council lacked the power to assess civil penalties because the Johnsonius letter was "the crux of the
controversy between the parties in this lawsuit and the sole basis of the trial court's supposed
jurisdiction over Seton's request for declaratory relief." According to the State, because the Attorney
General's admissions in the withdrawal letter constituted judicial admissions which "conclusively
ended any conflict between the parties," the district court's declaration that section 108.014 of the
Code allows for a $10,000 maximum penalty for failure to file an annual HEDIS report therefore
amounted to an unconstitutional advisory opinion. See National Collegiate Athletic Ass'n v. Jones,
1 S.W.3d 83, 86 (Tex. 1999) (noting mootness "prohibition is rooted in the separation of powers
doctrine in the Texas and United States Constitutions"). 

 This argument fails because the State attributes too broad an effect to the statements
made by the Attorney General in the withdrawal letter. The withdrawal letter merely stated that the
Johnsonius letter "was not intended as an assessment of civil penalties" because that power "is
vested in our courts." When Seton sought a declaration that $10,000 is the maximum penalty for
failure to file an annual HEDIS report, it did so with the State's implicit threat that "little remains
but to see how the Courts will interpret the Statute." An actual controversy remained because, to the
extent that the State still intended Seton to pay a penalty, the State would have to pursue litigation. 
The withdrawal letter did not concede that the State had misinterpreted section 108.014 nor did it
state that a daily penalty or other time sensitive interpretation of the statute would not be urged by
the State when it sought a civil penalty by a court. The Johnsonius letter was withdrawn by the
Attorney General several months before the Council counterclaimed, and at a time when Seton's
situation was not so hypothetical or contingent as to moot its need to obtain a declaratory judgment
construing the statute and the rule in dispute. 

 Contrary to the State's contention, we cannot hold that the withdrawal letter clearly
constituted a binding judicial admission as to the interpretation of the penalty provision such that the
dispute became moot. Judicial admissions, for example an admission in the pleadings on which the
case is being tried, an agreed statement of facts in the case, or a formal declaration in court, are
conclusive on the party making the admission. By contrast, ordinary admissions may be contradicted
or explained. Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex.
1980). Here, the withdrawal letter was not a formal statement made during the course of the judicial
proceeding that would remove all dispute over the statute's interpretation from the field of
controversy; rather, it was an ordinary or extrajudicial admission that the State could later contradict
or explain. Furthermore, the admissions made in the withdrawal letter by the Attorney General
concerned a question of law and therefore would not necessarily bind the Council or the State to any
particular interpretation of the Code, especially with respect to maximum penalties. See Tex. Gov't
Code § 402.004 (West 1998); (4) see also State v. Keeton Packing Co., 487 S.W.2d 775, 780 (Tex.
App.--Amarillo 1972, writ ref'd n.r.e.). (5) Thus, even after the Attorney General withdrew the
Johnsonius letter, the Council could still determine that seeking a greater assessment penalty against
Seton was a proper course of action. 

 The State further contends that the Council's counterclaim conceded Seton's
interpretation of the Code, thus causing Seton's declaratory judgment claim to become moot. The
counterclaim sought an order that Seton "pay civil penalties not to exceed $10,000 for each act of
violation for its failure to submit HEDIS data to [the Council] for 1999 and 2000 in violation of [the
Code]." In its motion for summary judgment, the State alleged "the maximum is $10,000 for each
act of violation" and that it was "neither requesting the assessment by this Court of penalties in
excess of $10,000 per violation, nor is there a threat to [Seton] that [the State] will do so in the
future." According to the State, these statements constituted judicial admissions that ended any
remaining controversy over the penalty provision's interpretation. The allegations do not, however,
assert what the State construes to be an act of violation. Previously, the State had taken the position
that each day the report remained unfiled constituted an act of violation for which a penalty could
be assessed. We do not view the statements made in the State's counterclaim and summary
judgment motion as constituting a judicial admission so as to conclusively establish that the Attorney
General and the Council had misinterpreted the Code and taken wrongful action based on that
interpretation. See Starks v. Houston, 448 S.W.2d 698, 699-700 (Tex. Civ. App.--Houston [1st
Dist.] 1969, writ ref'd n.r.e.). The pleadings request an assessment of $10,000 per violation and the
motion says the State seeks a maximum of that amount and is not seeking a greater amount. Read
together, however, one could argue that this is only the maximum the State seeks in these instances. 
The State does not allege an admission that the statute provides only for $10,000 maximum per
failure to file each annual report and no greater penalty can be assessed.

 Thus, although Seton acknowledges that the immediate controversy forming the
initial crux of its declaratory judgment action has ceased, it asserts that at the time of the district
court's decision the threat remained that the Council could reinstate its policy of assessing an
excessive penalty based on an erroneous construction of the statute. (6) This Court has held that under
some circumstances a party is not required to wait until an agency attempts to enforce a rule against
the party before seeking declaratory relief. See Public Util. Comm'n of Texas v. City of Austin, 728
S.W.2d 907, 910 (Tex. App.--Austin 1987, writ ref'd n.r.e.) (citing State Bd. of Ins. v. Deffebach,
631 S.W.2d 794, 797 (Tex. App.--Austin 1982, writ ref'd n.r.e.)). We believe a similar approach
applies here. Despite the State's voluntary abandonment of its effort to collect a $153,000 penalty,
the record shows that throughout the pendency of the case, the Council never took any extrajudicial
action to abandon its earlier construction of the statute. Nor does the record establish that a complete
resolution has been reached between Seton and the Council regarding the maximum civil penalties. 
See Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 441 (Tex. 1994) (holding case not moot where
evidence does not adequately show plaintiffs and defendants agree on when home schooled children
are exempt from compulsory attendance law).

 This Court dealt with a similar situation in Del Valle Indep. Sch. Dist. v. Lopez, 863
S.W.2d 507 (Tex. App.--Austin 1993, writ denied). There, we held that the appellees' declaratory
judgment action was not moot even though the appellant voluntarily abandoned an at-large electoral
system after the appellees challenged its constitutionality. Id. at 511. We stated: 

Without a declaration by the court or an admission by Del Valle that the at-large
system was unconstitutional, Del Valle was free to return to the at-large system.
Therefore, because Del Valle refused to admit that the at-large system was
unconstitutional, a declaration by the court that the system was unconstitutional was
essential to Appellees' purpose: the elimination of the at-large system and the
substitution of a single-member system. 



Id. We conclude that the district court had jurisdiction to issue the declaratory judgment because the
controversy was not moot and construction of the statute is a question of law. As in Del Valle, the
challenged action is a stance on a question of law that has been voluntarily abandoned without any
binding admission or extrajudicial action that would prevent a recurrence of the challenged action. 
See Del Valle Indep. Sch. Dist., 863 S.W.2d at 511; see also Reyna, 944 S.W.2d at 662. The
judgment declared that $10,000 is the maximum penalty that may be imposed under the statute or
agency rule for failure to file a HEDIS report. The State had not expressly admitted this. Thus, we
cannot say that the district court's construction of the statute had no practical effect or that it
amounted to no more than an advisory opinion on a question that "would be purely academic" so that
"we would have had a considerable amount of judicial wheel spinning for nothing." Firemen's Ins.,
442 S.W.2d at 333. And because neither the withdrawal letter by the Attorney General, the
Council's counterclaim, nor the State's summary judgment motion effectively prevented the Council
from threatening Seton with an excessive penalty in the future, we hold that the district court did not
err in issuing the declaratory judgment. (7) 


Sovereign Immunity 

 The State alternatively contends that Seton's declaratory judgment action is barred 

by sovereign immunity. According to the State, because neither the APA nor the UDJA by their
express terms waives the sovereign immunity of the State and its agencies, Seton is prohibited from
bringing a cause of action against the Council or the Attorney General. We disagree. State agencies
enjoy immunity from suit under the doctrine of sovereign immunity. See Texas S. Univ. v. Federal
Sign, 951 S.W.2d 401, 405 (Tex. 1997). However, the UDJA waives this immunity when a party
seeks a court's construction of a statute or rule. 

 According to the Supreme Court:



The DJA expressly provides that persons may challenge ordinances or statutes, and
that governmental entities must be joined or notified. Governmental entities joined
as parties may be bound by a court's declaration on their ordinances or statutes. The
Act thus contemplates that governmental entities may be--indeed, must be--joined
in suits to construe their legislative pronouncements. These provisions provide the
context for the Act's authorization, in § 37.009, of attorney fee awards. We conclude
that by authorizing declaratory judgment actions to construe the legislative
enactments of governmental entities and authorizing awards of attorney fees, the DJA
necessarily waives governmental immunity for such awards. 



Leeper, 893 S.W.2d at 446; see also City of LaPorte v. Barfield, 898 S.W.2d 288, 297 (Tex. 1995);
Texas Workers' Comp. Comm'n v. Texas Builders Ins. Co., 994 S.W.2d 902, 909 (Tex.
App.--Austin 1999, pet. denied). Seton's action sought a declaration that $10,000 per report is the
maximum civil penalty that may be assessed under the Code for failure to file a HEDIS annual
report. Seton also sought to recover its attorney's fees and costs incurred in obtaining the requested
relief. In any event, the Council counterclaimed against Seton for assessment of penalties under
section 108.014(b) of the Code. In the course of that proceeding, Seton was entitled to seek the
court's interpretation of the statute in question. Because Seton seeks construction of a statute, we
overrule the State's first issue. 


Abuse of Discretion

 In its third issue, the State contends the district court erred in assessing against Seton
only the minimum penalty of $1,000 for failure to file each of the 1999 and 2000 reports. The State
argues that the district court abused its discretion because "Seton's violation was willfully and
knowingly in contravention of the statute and agency rules . . . ." A trial court abuses its discretion
when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). This
Court may not reverse for abuse of discretion merely because we disagree with the decision of the
trial court. Id. 

 According to the State, the district court penalized Seton's "flagrant violation of the
mandatory reporting requirements" with no more than a "mere slap on the hand," therefore defeating
the "well-settled" principle that civil penalties are imposed as punishment rather than compensation
to the injured party. In support of this proposition that the State characterizes as "well-established,"
we are directed to Whorton v. Nevitt, 42 S.W.2d 1056, 1057 (Tex. Civ. App.--Waco 1931, no writ.)
("The term [penalty] involves the idea of punishment."). We do not find this case to be particularly
instructive; it involved only the question of whether an action to recover double the amount of
usurious interest was an action for a debt or for a penalty. See id. It does not provide a rule or
principle by which the district court was to be guided in assessing a penalty against Seton. Nor does
section 108.014, by its terms, provide any guidance. It merely provides that a court is not to assess
less than $1,000 or more than $10,000 per filing violation. The court has discretion to assess a
penalty within the prescribed range of punishment. It did so. We are unwilling to say that the
district court abused its discretion in assessing an amount within the range prescribed by the
legislature.

 Furthermore, the State's reliance on Seton's alleged willful and intentional violation
is misplaced. Section 108.014(b) does not explicitly ascribe any culpable mental state as a factor to
be considered by the court in assessing the penalty. However, the preceding provision does. Section
108.014(a) states: "A person who knowingly or negligently releases data in violation of this chapter
is liable for a civil penalty of not more than $10,000." Tex. Health & Safety Code Ann. § 108.014(a). 
If the legislature intended a more severe punishment for a willful and knowing failure to supply the
data in section 108.014(b), as the State suggests, it could expressly provide for that as it did in section
108.014(a). Thus, the district court need not base the assessment of a penalty on the willful intent
with which Seton violated the Code. Rather, as Seton suggests, the district court may have been
influenced by the State's earlier demand for an excessive penalty and by its refusal to accept Seton's
repeated offers to tender a statutory penalty. The record does not reflect that the district court clearly
abused its discretion. We overrule the State's third issue.


Permanent Injunction

 The State contends in its second issue that the district court erred by denying the
State's request for a permanent injunction in addition to civil penalties because the summary
judgment evidence entitles it to judgment as a matter of law. The State sought summary judgment
to permanently enjoin Seton from violating the Code by ordering it to submit HEDIS reports for the
years 1999 and 2000 and each subsequent year thereafter. 

 The grant or refusal of a permanent injunction is ordinarily within the trial court's
sound discretion. On appeal, review of the trial court's decision is limited to the question of whether
the court's refusal to grant injunctive relief constituted a clear abuse of discretion. South Texas
College of Law v. Texas Higher Educ. Coordinating Bd., 40 S.W.3d 130, 139 (Tex. App.--Austin
2000, pet. denied); Risk Managers Int'l, Inc. v. State, 858 S.W.2d 567, 568-70 (Tex. App.--Austin
1993, writ denied); Priest v. Texas Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex. App.--Dallas
1989, no writ). In this case, the standard of review becomes somewhat more complex because the
State's request for injunctive relief was dismissed with prejudice pursuant to the district court's grant
of Seton's cross motion for summary judgment and denial of the State's summary judgment motion. 
See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n, 25 S.W.3d 845, 848 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied). With the standards of review for injunctive relief and
for summary judgment in mind, we must consider all the summary judgment evidence to determine
whether the trial court clearly abused its discretion by denying the permanent injunction.

 On appeal, the State argues that the only question before this Court is whether the 
State established its right to injunctive relief. It contends that it did so because the APA expressly
provides that a state agency may request the Attorney General to seek injunctive relief when it appears
that a person is violating, failing, or refusing to comply with an agency rule. The State cites section
2001.202 of the Texas Government Code, which provides:



 The attorney general, on the request of a state agency to which it appears that a
person is violating, about to violate, or failing or refusing to comply with a final
order or decision or an agency rule, may bring an action in a district court
authorized to exercise judicial review of the final order or decision or the rule
to:

 
 enjoin or restrain the continuation or commencement of the violation; or
 compel compliance with the final order or decision or the rule.

 
 The action authorized by this section is in addition to any other remedy provided
by law.




Tex. Gov't Code Ann. § 2001.202 (West 2000). The State argues that because the legislature did
not explicitly limit the relief in chapter 108 of the Code to civil penalties, this Court "should assume
that the legislature intended section 2001.202 to be applicable to proceedings under the Act." Seton
argued in its response to the State's summary judgment motion that because the legislature provided
a remedy in the form of a civil penalty and did not provide for injunctive relief in the Code, the civil
penalty provided in section 108.014 constitutes an exclusive remedy for its failure to file. 

 We have not located a reported case that applies section 2001.202 of the APA to a
situation where violation of the underlying regulatory statute expressly provides a civil penalty. It
has been specifically determined that a "person who fails to supply available data under Sections
108.009 and 108.010 is liable for a civil penalty of not less than $1,000 or more than $10,000 for
each act of violation." Tex. Health & Safety Code § 108.014(b). (8) Nowhere does the Code expressly
grant the State authority to seek injunctive relief. Arguably, we may presume that the failure to
provide for injunctive relief in the Code reflects a legislative purpose. See City of Austin v. Quick,
930 S.W.2d 678, 687 (Tex. App.--Austin 1996), aff'd, 7 S.W.3d 109 (Tex. 1999). We cannot say
that the punishment provided, without the added remedy of an injunction, completely frustrates
legislative intent. These concerns should be properly addressed to the legislative branch.

 Assuming the remedies are cumulative, however, the issue remains whether the State
showed it was entitled to the additional relief as a matter of law so that by failing to order this relief
the trial court clearly abused its discretion. The State does not suggest that section 2001.202 was
meant to supplant the traditional elements of proof necessary to obtain injunctive relief; therefore,
even if section 2001.202 allows for a permanent injunction in this case, we cannot say that the State
established as a matter of law its entitlement to a permanent injunction.

 Ordinarily, a party requesting injunctive relief must show the existence of a wrongful
act, the existence of imminent harm; the existence of irreparable injury; and the absence of an
adequate remedy at law. Jim Rutherford Inv., 25 S.W.3d at 849; Priest, 780 S.W.2d at 874. 
Generally, the purpose of injunctive relief is to halt wrongful acts that are threatened or in the course
of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the
commission of wrongs not imminently threatened. Texas Employment Comm'n v. Martinez, 545
S.W.2d 876, 877 (Tex. Civ. App.--El Paso 1976, no writ). In support of its motion for summary
judgment, the State submitted several affidavits, including one by the executive director of the
Council, which showed that Seton was required to file an annual HEDIS report with the Council but
failed to meet the reporting deadlines in 1999 and 2000, and offering estimated costs associated with
compiling the report ranging from a low of $62,666 to a high of $700,000. In its response, Seton did
not dispute these facts; rather, Seton argued in part that this evidence failed to prove irreparable harm
to the State and failed to prove that the civil penalty did not constitute an adequate remedy at law. 

 On appeal, the State makes the same arguments. In effect, the State contends that
because both forms of relief are authorized and may be ordered, the trial court clearly abused its
discretion by not ordering them both. It relies primarily upon the argument that it costs less for Seton
to pay the penalty than to file the report, thus additional punishment is justified. Even assuming the
State's proof of possible comparative costs may be true, that does not prove the State must be
granted injunctive relief or conclusively prove that the court had no discretion to refuse injunctive
relief. The district court assessed a civil penalty against Seton as provided by statute for its failure
to file HEDIS reports in 1999 and 2000. The penalty was within the range authorized by statute. 
Understandably, the State disagreed with the amount and wanted the additional relief it requested. 
However, we cannot say that the State has shown that the civil penalty ordered does not provide an
adequate remedy at law or is inconsistent with legislative intent. Only where the summary judgment evidence is such that it demonstrates that the
denial of relief would be a clear abuse of discretion may a permanent mandatory injunction be
entered in response to a summary judgment motion. Moreover, "an injunction will not lie to prevent
an alleged threatened act, the commission of which is speculative and the injury from which is purely
conjectural." Markel v. World Flight, Inc., 938 S.W.2d 74, 80 (Tex. App.--San Antonio 1996, no
writ). Summary judgment proof merely suggesting that Seton may year after year deliberately refuse
to file the report and instead pay the fine because of a cost-benefit analysis does not constitute
imminent harm, nor is it enough to prove as a matter of law that the State has suffered irreparable
injury. Rather, the State's proof only shows that, except for Seton, all of the other HMOs filed
HEDIS reports despite the costs and deadlines. Furthermore, given that the State can seek an
assessment of a statutory penalty for Seton's possible future violations, we cannot say that the State
has an inadequate legal remedy. The State's summary judgment evidence thus fails to prove that its
right to the extraordinary remedy of a permanent mandatory injunction is so clear and compelling
as to constitute an abuse of discretion on the part of the district court. We hold that the State failed
to establish as a matter of law its entitlement to a permanent injunction, and therefore overrule the
State's second issue. 


State's Attorney's Fees

 In its final issue, the State contends that the district court erred in failing to award its
attorney's fees under the government code, section 402.006(c), which states: "In a case in which the
state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state,
to reasonable attorney's fees and court costs." Tex. Gov't Code Ann. § 402.006(c) (West 1998). 
To pursue civil penalties under the Code, the State must institute legal action. Here, the State sought
an assessment of the civil penalty against Seton by way of counterclaim, which the trial court
dismissed with prejudice. Nevertheless, the district court assessed Seton $1,000 for failure to file
each of the 1999 and 2000 reports. Looking at the plain language of the statute, we believe that the
legislature provided for the recovery of attorney's fees any time the State recovers a penalty or tort
damages, and we have so held. See State v. Triax Oil & Gas, Inc., 966 S.W.2d 123, 127 (Tex.
App.--Austin 1998, no pet.) (awarding attorney's fees under section 402.006 where State recovered
civil penalty); see also Merchants Fast Motor Lines, Inc. v. State, 917 S.W.2d 518, 524 (Tex.
App.--Waco 1996, writ denied) (awarding attorney's fees under section 402.006 where State
recovered tort damages). 

 Seton argues that, despite the clear directive of section 402.006, the State should be
precluded from an award of attorney's fees because in this instance the "uncontroverted summary
judgment evidence conclusively established that suit was not necessary to recover a civil penalty." 
Although this may be true, this contention is not dispositive because Seton offers no legal grounds
as its support. An appellee's brief must conform to the requirements of rule 38.1 of the Texas Rules
of Appellate Procedure, including rule 38.1(h). Tex. R. App. P. 38.2(a)(1); 38.1(h). Seton also
suggests that the district court could not award reasonable attorney's fees because the State's
summary judgment evidence did not segregate the amount spent exclusively in seeking the civil
penalty. We reject this argument on the grounds that section 402.006 and the cases interpreting it
do not require this segregation. The State recovered a civil penalty from Seton and, by statute, is
entitled to attorney's fees. Because the record does not make clear to this Court the basis for the
district court's failure to award attorney's fees to the State, the issue is remanded to the district court
for the limited purpose of considering the State's request for reasonable attorney's fees and court
costs under section 402.006 of the government code.


CONCLUSION


 We hold the district court did not err in granting Seton's declaratory judgment claim 

and in denying the State's request for injunctive relief. We also hold that the district court did not 
abuse its discretion in assessing the minimum statutory penalty against Seton for its failure to file
the HEDIS reports but that the district court did err in not properly considering attorney's fees for
the State's recovery of the penalty under section 402.006 of the government code. Accordingly, we
affirm the district court's declaration that $10,000 is the maximum penalty allowed for failure to file
an annual HEDIS report; we affirm the portion of the judgment granting Seton's summary judgment
and dismissing the State's permanent injunction counterclaim; we affirm the assessment of $1,000
against Seton for each unfiled HEDIS report; we remand the issue of the State's entitlement to
reasonable attorney's fees to the district court for consideration of same in accordance with this
opinion.



 __________________________________________

 Marilyn Aboussie, Chief Justice 

Before Chief Justice Aboussie, Justices Patterson and Puryear

 Opinion by Chief Justice Aboussie; Justice Patterson concurs

 Dissenting Opinion by Justice Puryear


Affirmed in Part; Reversed and Remanded in Part


Filed: December 19, 2002


Publish
1. According to the Code, the "attorney general, at the request of the council, shall enforce
this chapter." Tex. Health & Safety Code Ann. § 108.014(c) (West 2001). Also, a "civil penalty
recovered in a suit instituted by the attorney general under this chapter shall be deposited in the
general revenue fund to the credit of the health care information account." Id. § 108.014(d). 
2. Kay Johnsonius, Assistant Attorney General, told counsel for Seton that the State had
calculated the penalty by determining that Seton's 1999 report was 153 days late, which, at $1,000
per day, amounted to a $153,000 civil penalty. 
3. Seton's 2000 HEDIS data was due to be filed with the Council on June 15, 2001; it was
overdue by the date the Council filed its counterclaim.
4. Section 402.004 provides that "an admission, agreement, or waiver made by the attorney
general in an action or suit to which the state is a party does not prejudice the rights of the state." 
Tex. Gov't Code Ann. § 402.004 (West 1998).
5. In State v. Keeton Packing Co., 487 S.W.2d 775, 780 (Tex. Civ. App.--Amarillo 1972,
writ ref'd n.r.e.), the court applied the predecessor of section 402.004 of the Government Code. The
court held that any admission in a letter by the Attorney General, to the effect that the State Highway
Commission had no further need for the excess land and that it was his opinion that consideration
for the deed had failed, was not binding on the State: "Whether or not land is further needed by the
State Highway Commission is left for the determination of that body and is not within the
discretionary powers of the attorney general." Id. The Attorney General argues that because it is a
party to the litigation, its admissions bind the parties. But the admission of one co-defendant does
not bind another co-defendant.
6. In its response and cross motion for summary judgment, Seton admitted that the
controversy giving rise to its declaratory judgment action had ended: "Plaintiff acknowledges that
no current controversy exists between itself and the State on the issue of the maximum civil penalty
for 1999 and 2000 . . . ." Seton argues, however, that it fears the Council will "in the future attempt
to assess penalties in excess of the maximum allowed by the regulation" because the Council
"remains free to interpret the statute differently and to seek penalties of more than $10,000 in the
future."
7. In a sub-issue, the State contends that the district court abused its discretion in awarding
attorney's fees to Seton when it lacked the power to grant declaratory relief. Because we hold that
the district court had that power, we need not address this argument.
8. The agency rule provides that "[f]ailure to timely report verified HEDIS data is punishable
by a civil penalty of not less than $1,000 nor more than $10,000 for each violation as set forth in
Health and Safety Code, § 108.014." 25 Tex. Admin. Code § 1301.35 (West 2002) (Texas Health
Care Information Council, Health Care Information).